JORGE AGRAMONTE GADEA, ETC., demandante y recurrente, *v.* PORTO RICAN AND AMERICAN INSURANCE COMPANY, demandada y recurrida.

Número: R-67-101      Resuelto: 27 de junio de 1968

*Ernesto Maldonado Pérez* y *C. Zoraida del Río,* abogados del recurrente; *Martínez Muñoz, Agrait Oliveras & Otero,* abogados de la recurrida.

Sala Primera integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Blanco Lugo, Rigau y Ramírez Bages.

PER CURIAM: La sociedad de gananciales compuesta por Jorge Agramonte y su esposa Josefa Alverio instó demanda contra su aseguradora Porto Rican and American Insurance Company, en cobro de las pérdidas sufridas con motivo de un incendio ocurrido en su establecimiento mercantil.

Se celebró un juicio plenario en los méritos([1]) y el Tri-

---

([1]) Con anterioridad el Tribunal había declarado sin lugar una moción sobre sentencia sumaria presentada por la parte demandante y posteriormente nos negamos a revisar dicha resolución mediante *certiorari.*

bunal Superior, Sala de Bayamón, dictó sentencia declarando sin lugar la demanda con las costas, luego de formular las siguientes:

*"Conclusiones de Hecho*

1—El día 17 de febrero de 1964, se desarrolló un incendio en el negocio de joyería que tenía el demandante Jorge Agramonte Gadea ubicado en la Calle Dr. Veve #100 de Bayamón.

2—Para esa fecha la Porto Rican and American Insurance Co. tenía una póliza de seguro que cubría el riesgo de pérdida de la mercancía y equipo del demandante, con motivo de fuego, que se encontrara en el local mencionado. La póliza cubría el riesgo de pérdida de la mercancía hasta $10,000 y de $3,000 sobre mobiliario y equipo. Dicha póliza entró en vigor el 8 de junio de 1962 por un período de cinco años.

3—El demandante adquirió el negocio de joyería en el año 1961. No sabemos el volumen de su negocio de joyería ni el ingreso o pérdida del mismo durante dicho año procedente o con motivo del mismo.

4—El demandante rindió planillas sobre contribución sobre ingresos al Estado Libre Asociado de Puerto Rico para los años 1962 y 1963. Las partes estipularon y el Tribunal concluye que para los fines de la tasación y pago de la patente municipal al Municipio de Bayamón el demandante, por informes rendidos por él o por estimados hechos por el propio municipio tenía un volumen bruto de negocio o ventas de su joyería ascendente a $6,000 en el año 1961; a $15,000 en el año 1962 y a $30,000 en el año 1963.

5—El demandante rindió planillas sobre contribución sobre ingresos al Estado Libre Asociado de Puerto Rico para el año 1962. De la planilla rendida por él correspondiente a dicho año aparece que terminó dicho año, es decir, al 31 de diciembre de 1962, con un inventario de mercancía en su negocio de joyería montante a $1,400.00.

6—Durante el año 1963 el demandante efectuó una remodelación en su negocio comenzando en el mes de marzo, continuando hasta terminarlo en noviembre de 1963. Las partes estipularon y el Tribunal concluye que el demandante adquirió mercancía para su negocio a un costo de $13,388.70, durante el año 1962, 1963 y los 48 días del año 1964 que precedieron al

incendio. Durante los días del 1ro. de enero de 1964 al 17 de febrero de 1964, un total de 48 días incluyendo días feriados, el demandante adquirió mercancía a un costo de $2,295.45 para su negocio de joyería.

7—Un examen de las planillas de contribución sobre ingresos correspondiente al 1963 revela que los únicos ingresos reportados por él al Estado Libre Asociado durante el año indicado fueron de una sola fuente, a saber, de 'R.P. Farnsworth' y ello ascendió a la suma de $4,250.12. Nada reportó el demandante por ingresos durante ese año resultante de la operación de su negocio, si algunos tuvo. La explicación del demandante al efecto de que un funcionario del Negociado de Contribución Sobre Ingresos le extendió una prórroga verbal por dos años para rendir una planilla suplementaria correspondiente al negocio no le merece crédito alguno al Tribunal.

8—El demandante tenía a su cargo la preparación de los asientos en sus libros de cuentas y contabilidad del negocio durante los años 1962, 1963 y los meses de 1964 que precedieron al incendio. El demandante no sabe, o no recuerda, y nada informó al Tribunal sobre el volumen de ventas durante el año 1963, ni durante los cuarenta y ocho días del año 1964 que precedieron al incendio. Todo lo que el Tribunal tiene es un estimado sobre el volumen bruto de negocio del demandante durante el año 1963 para los fines de la patente municipal. Los $30,000 de volumen *bruto* de negocio es un dato a considerar. Pero el demandante no colocó a este Tribunal en condiciones de determinar cuál fue el volumen *neto* de su negocio. El costo de las ventas puede haber sido un 50% o un 25% del volumen bruto, pero el Tribunal no puede especular. Faltando los datos básicos toda conclusión ulterior resulta una conjetura.

9—El precio de las compras durante el año 1963 sumadas al inventario incial reportado, más las compras durante los 48 días que precedieron al incendio es un dato a considerar pero no por sí solo suficiente para ajustar la pérdida del demandante resultante del incendio. El demandante no reportó ingreso alguno de su negocio correspondiente al año 1963 en su planilla de contribución sobre ingresos. El demandante estaba en mejor posición entonces que a la fecha del juicio para recopilar los datos para llevar su planilla. Su memoria estaba más fresca entonces que a la fecha del juicio. Es ilógico pensar que disfrutaba de más información casi tres años después del siniestro.

De todos modos el demandante no colocó a este Tribunal en posición de hacer una determinación en cuanto a la pérdida realmente sufrida, libre de especulaciones y conjeturas.

10—Tomando arbitrariamente un volumen bruto de ventas de $30,000.00 y que el costo de las ventas, sobre lo cual no se aportó prueba alguna, ascendía a un 50% o $15,000, tendríamos que el demandante tenía un volumen de negocio mensual promedio montante a $1,250.00. Si añadimos a ese dato la experiencia al efecto de que las ventas durante los últimos meses del año aumentan con motivo del espíritu de la Navidad, nos encontramos que el exceso de $15,000 en mercancía existente a la fecha del siniestro no está a tono con la mejor práctica comercial que asumimos seguía el demandante: un inventario proporcionalmente en esceso [sic] al que requería el volumen de negocio.

11—El demandante tampoco puso en posición al Tribunal de hacer una adjudicación en torno a la pérdida del equipo. El costo era un factor a considerar. Pero en el presente faltó la prueba que nos indicara el 'valor real en efectivo de la propiedad en el momento de la pérdida . . .' que es la medida de la pérdida estipulada en la póliza.

### Determinaciones de Derecho

1—La presente acción está fundada en un contrato de seguro cubriendo el riesgo de daño a mercancía y a equipo del asegurado aquí demandante localizado en el local allí descrito resultante de incendio. Incumbía al demandante establecer el montante de la pérdida, y dejó de hacerlo. Véase *Dragoni vs. U.S. Fire Insurance Co. (1927) 36 DPR 469; García vs. Palatine Ins. Co., Ltd. (1932) 43 DPR 64,* y específicamente *López Pérez Inc. vs. Western Assurance Co., (1929) 40 DPR 163, 165* donde se sostiene:

'. . . el peso de la prueba respecto a las pérdidas recaía sobre la demandante. . . .'

El demandante intentó demostrar que la aseguradora adoptó una actitud de indiferencia y poca cooperación en el trámite de su reclamación. La evidencia en autos consistente en comunicaciones cursadas entre el demandante y el ajustador de la compañía de seguros (Exhibit 2 al 14, inclusive) demuestran por el contrario una razonable diligencia de la aseguradora por

cumplir con las disposiciones del contrato de seguros, según éstas le obligan. Fue el demandante, sin embargo, el que, no empece los requerimientos continuos de la aseguradora, no actuó de conformidad, sino que pretendió obtener el pago de la alegada pérdida sin producir, por lo menos, prueba alguna que apoyara razonablemente la suma reclamada. Se limitó a someterles un paquete de facturas de compras por los años 1962, 1963 y 1964. Esto a lo sumo demostraba las compras por esos años, pero no la existencia al momento del siniestro que es la base de la reclamación." (Exh. IX)

■ En este recurso los demandante imputan al tribunal sentenciador la comisión de tres errores. Los dos primeros se refieren a los incidentes relacionados con las mociones solicitando sentencia sumaria. No hay que pasar sobre ellos. Está ante nos para su revisión una sentencia dictada luego de celebrarse un juicio en los méritos.

En el tercer señalamiento se atacan las determinaciones de hecho formuladas por el tribunal sentenciador por el fundamento de que las mismas son contrarias a la prueba y a las estipulaciones acordadas por las partes.

■ Del examen del expediente no podemos concluir que el tribunal de instancia incurriera en error al resolver que la parte demandante no le había puesto en condiciones de determinar el monto de la pérdida sufrida por ellos, que conforme al contrato de seguro, era el valor real de la mercancía y del equipo perdido en el siniestro. Dificulta aun más nuestra labor de resolver si la sentencia es o no correcta, el hecho de que los recurrentes no han elevado a este Tribunal la transcripción del testimonio prestado en el juicio por el señor Agramonte, única prueba testifical considerada por el juzgador de los hechos para dictar la sentencia.

*Debe confirmarse la sentencia del Tribunal Superior, Sala de Bayamón.*